## HATTIE MARTIN v. THE STATE.

### No. 288.   Decided January 12, 1910.

**1.—Robbery—Jury and Jury Law—Jury Wheel—Talesmen.**

Where, upon appeal from a conviction of robbery, it appeared from the record that, owing to the crowded condition of the trial court's docket and the county jail, the court had to utilize all time possible; and it further appeared in some unexpected way no jury had been drawn from the jury wheel, there was no error in the court's action in having talesmen summoned in order to secure jurors for the transaction of the business of the court.

**2.—Same—Separation of Jury—Practice in District Court.**

Where, upon trial for robbery, it appeared, after the jury had been ·tested generally as to their qualifications, etc., and before any juror had been selected on the jury which tried the defendant, that they were permitted to separate during adjournment of the court for the noon hour, there was no error.

**3.—Same—Argument of Counsel—Response.**

Where, upon trial for robbery, it appeared from the record on appeal that the argument of State's counsel complained of was in response to the argument of defendant's counsel, and the court had orally instructed the jury to disregard the same, and the whole matter was of no great importance, there was no reversible error.

**4.—Same—Evidence—Confessions—Warning—Statutes Construed.**

The Act of the Thirtieth Legislature, which excludes confessions made under arrest except when made under proper warning, etc., does not apply where the testimony consisted of the finding of the alleged stolen property; and where, upon trial for robbery, the State's witness testified that the defendant handed

him the alleged stolen purse, there was no error, although defendant claimed that the purse was turned over to her by some one else.

**5.—Same—Newly Discovered Evidence—Want of Verification—Practice.**

Upon appeal from a conviction of robbery, where it appeared from the record that the alleged newly discovered testimony was in nowise verified, and the motion for new trial was not even sworn to by the defendant, it could not be considered.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for robbery, the punishment assessed being five years confinement in the penitentiary.

The evidence shows that appellant, with two other parties, committed robbery from the person of R. L. Smith. The State's evidence is to the effect that the assaulted party was in the city of Dallas, having come over from Oak Cliff, and was standing on the corner of Wood and Jefferson Streets waiting for a street car to return home. While standing there a white man, who had been following him, came up and said: "Hello, pal, where are you going?" The witness told him he was going home when his car came. Witness says the white man grabbed him by the right arm, and the negro man took hold of the other arm, and appellant came up, and the white man handed her a bottle, which he took out of his pocket, and told her to hold it to witness' nose. She pulled the stopper and held the bottle to his nose until he lost consciousness. When he regained consciousness he was back of an old rock house that stands on the corner, and was covered with a lot of sacks, papers and old stuff. He says he was almost suffocated, and thought he was dead. He immediately made complaint, and appellant was arrested, being recognized by the fact that she only had one leg, or "limb," as the witness calls it. She at first denied knowing anything about the matter, but finally returned the purse taken from the witness. This purse was valued at ten cents, and had $1.10 inside. This witness said he was robbed by the one legged negro woman, a negro man, and a white man, and so described the people to the officer who made the arrest. Appellant took the stand and denied any connection with it, and said that the alleged assaulted party came to her house, and offered her fifty cents for permission to go to bed with her; that he

was drunk. She denied making the statement to the officer about which the officer testified, and told him that the purse that she had was given to her by the negro, Jim Cass.

1. The first bill of exceptions recites that when the case was called appellant objected to proceeding with her trial on the jury lists handed him. The bill recites her objections as follows: "This case was set for trial during a week when there was no drawn jury according to the wheel jury law passed by the Legislature for counties having a city of more than twenty thousand population or according to the statutory law providing for the selection of juries. The defendant objected to going to trial with a picked up jury." These objections were overruled, and appellant's attorneys ordered to proceed with the selection of the jury from the list furnished. It seems from the recital in the bill that the case had been set down for trial the previous week, to wit: on the 17th day of February, but owing to the fact that a number of cases were tried, this case was not reached or called, but was postponed and reset for the 22d of February. The bill further recites that the court had ordered regular juries drawn, and they had been drawn for alternate weeks, as has been the habit of the court, that is, one week for ordinary felony cases, and the next week for special venire cases. In the alternate weeks, special venire cases, a large number of which were on the docket, had been set for trial. The case of the State v. Kaufman was set for the 22d, and the court having reason to believe that said cause would be continued when reached, ordered a number of cases set during that week to be taken up in case the court should be idle, the court stating to counsel, and here states, that owing to the crowded condition of the docket and the county jail, he wanted to utilize every moment possible. When the Kaufman case was continued upon application of the defendant "the court ordered the sheriff to procure, and he did procure in a legal way, talesmen to serve as jurors during that week, and this was the list furnished the defendant. Therefore, because in a manner unexpected no jury has been drawn from the wheel and the court could not run without a jury, the court overruled the defendant's objections to the panel of talesmen and required a jury to be selected from said panel." As this bill presents the matter, we are of opinion there is no error shown. In the absence of jurors drawn under the terms of the statute, as here shown, we are of opinion that the court is not without power to secure jurors for the transaction of the business of the court. So in this case we are of opinion the court had the authority to have a jury summoned for the disposition of such cases as were set down for trial.

2. Another bill recites that after the jury had been examined as a whole, but no challenge had been made, it was noticed that it was adjourning time, and the court announced that he would

not lock the jury up for the noon hour, as they had not been selected, or sworn, and that the taking of evidence had not begun, but he would allow them to go at large unaccompanied by any officer during the noon hour. As this bill recites it, we see no error in this ruling of the court. The mere fact that all of the jurors summoned had been tested, but none of them selected to try the case, nor in any manner set apart or sworn, does not come within the inhibition of the statute preventing the separation of the jury. That statute refers to jurors who had been segregated and impaneled in the case. Here no juror had been selected, they had simply been tested as a whole, which we suppose means their qualifications in a general way had been tested for excuses and matters of that sort. As the bill is incorporated in the record, we are of opinion there is no error shown.

3. There is quite a lengthy bill complaining of a speech of the assistant county attorney. When the court's attention was called to the statements of the county attorney, the court instructed the county attorney to stay within the facts of the case, and cautioned him against making the comments he had made, and instructed the jury that it was not legitimate argument, and that the county attorney should not have used the same, and the jury would not consider it for any purpose whatever. The language used was as follows: "It makes no difference how prominent a lawyer is, he had no right to abuse a witness as defendant's counsel has abused Mr. Smith," and further, "If a lawyer were to abuse me in that way, I would hold him personally responsible for it." In this connection the bill shows that counsel for appellant had been severe on the witness Smith, had called him a "night invader of the South End saloons," and said the witness was in no shape, having taken at least two glasses of beer, to know what really happened, and furthermore said in his argument that Smith was not entitled to any more respect or consideration or to be believed by the jury than—that is, the court so remembered—referring to defendant, and many other like expressions.

Then followed the above caution and instructions of the court. After this the court proceeded to write the charge, and was not noticing the argument closely when defendant's counsel again objected, stating that the State's counsel was calling his client a vile wretch. The prosecuting attorney stated to the court that he was not calling his client a vile wretch, but was quoting from appellant's counsel wherein he said that Mr. Smith was entitled to no more credit than this vile wretch here, and that he was only quoting the language of appellant counsel used in regard to his own client. This appellant's counsel denied, and said he had only spoken of his client as a poor unfortunate wretch. Again the court instructed the jury that he did not hear the language used, but that if prosecuting attorney

did call the woman a vile wretch, that he had no right to do so, and that the jury should not consider it against the defendant for any purpose, and again told counsel not to use that language any further, but to discuss the facts of the case. The prosecuting attorney then remarked to the jury that appellant's counsel was in the habit of abusing the State's witnesses, and further stated that appellant's counsel had a mania for abusing witnesses when he was defending people charged with crime, and that he had done so in this case in behalf of this woman, who, according to the record, was a self-confessed thief and robber. Again counsel objected, and the court told the prosecuting attorney he must not comment upon any mania or habit of appellant's counsel, as that was not a part of the case, and again admonished him to keep within the record and discuss his case, and the court again told the jury not to consider any such statement as that made by counsel for the State for any purpose whatever, and the court told the prosecuting attorney if he did not obey the orders of the court from this time forward that he would punish him, and subsequently said to counsel for the State to argue the law and facts in a legitimate way. This is the bill of exception. We are of opinion as this bill presents the matter, it is not of sufficient importance to require a reversal, and as the bill presents the matter, it seems the county attorney was answering the argument of appellant's counsel, or at least the court so leaves the matter as claimed by the prosecuting attorney.

4. The policeman, Brown, who arrested appellant, stated that he was told of the robbery, and given a description of the party that suited defendant, and he went with the purpose of going where she was to be found. Before getting to her house he met and stopped her, that is, he said, "Hello, Hattie," and she stopped. He asked her where the man's purse and money was that she took from him. She denied taking the man's money or purse. The officer stated, "You did, and I have proof." She again denied it, and he informed her that she did, and that she had "better come across and tell the whole as it will be better for you." She then admitted having the purse, and gave it to the officer. He then told her he would have to lock her up, and turned her over to another officer who took her to the city jail. Objection was urged to this because this statement had been elicited from her while she was under arrest and had not been warned. The court overruled these objections, and admitted the testimony. Concede under the facts she was under arrest at the time, it would make no difference under the circumstances stated, because the officer obtained from her part of the stolen property. Article 790 as amended by the Act of the Thirtieth Legislature, page 219, reads as follows: "The confession shall not be used if at the time it was made the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless made

in the voluntary statement of the accused taken before an examining court in accordance with law, or be made in writing and signed by him, which written statement shall show that he had been warned by the person to whom the same is made: First, that he does not have to make any statement at all. Second, that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made, or unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed," etc. If it be conceded that the party was sufficiently under arrest to exclude the conversation occurring between the parties at the time, still we are of opinion this testimony would be admissible under the second clause of this law, that is, "that any statement may be used in evidence against him on his trial for the offense concerning which the confession is therein made, or unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed." There is no question under the facts from the State or the defendant's side that appellant had the stolen purse and turned it over to officer Brown. There is some difference in the statement of appellant and the officer in regard to the conversation. Appellant said when she turned it over she made the statement that she received it from Jim Cass, one of the parties supposed to be connected with the robbery. She had possession of the stolen purse. The officer does not agree with her in regard to that statement, but in any event the stolen property was found in her possession, and she delivered it to the officers. This makes the case come within the exception in the statute, and authorized the court to permit the introduction of her statements.

5. One of the grounds of the motion for new trial is to the effect that Cass, who had been jointly indicted with appellant, was discharged by the county attorney, and that Cass would now testify that he found the pocketbook that was supposed to have been in the possession of the defendant, and gave it to her, and it is stated in the motion that Cass's affidavit is attached to the motion for new trial, and she alleges that this testimony is newly discovered by reason of the fact that the case against Cass had been dismissed by the county attorney subsequent to appellant's trial. A sufficient answer to this is found in the fact that there is no affidavit made by Cass incorporated in the record, and nothing to verify any statement to which Cass would testify. The motion for a new trial is not even sworn to by appellant. In other words, this ground of the

motion is simply a statement unverified. As presented it can not be reviewed.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*