## FRANK KYLE v. THE STATE.

### No. 5489. Decided January 14, 1920.

**1.—Receiving Stolen Property—Evidence—Confessions—Rule Stated.**

Where property is found in pursuance to a confession it does not come within the rule of warning and written confessions.

**2.—Same—Evidence—Declarations of Third Party.**

Where defendant in his confession stated that a third party received the alleged stolen property, who was thereupon arrested and some of the stolen property was secured, the acts and conduct of said third party which amounted to a confession would not be evidence against the defendant, even though committed in the latter's presence. Following: Wright v. State, 37 Texas Crim. Rep., 627, and other cases; although it could be shown that said third party turned over said property to the officers of the law; there being nothing to show that defendant instructed said third party with reference to the property but simply claimed that he had pawned it to him.

**3.—Same—Evidence—Confession—Arrest.**

Upon trial of receiving stolen property, it was error to admit in evidence the acts and declarations of the third parties, with reference to a search for the alleged stolen property at the time defendant was under arrest, and to use this statement of the said third parties against the defendant.

**4.—Same—Charge of Court—Name of Party From Whom Property was Received**

Where, upon trial of receiving stolen property, from a certain party named in the indictment after it had been fraudulently acquired during a burglary, the court should have confined his charge to said party alleged, and should not have made the guilt of the defendant dependent upon the fact that if he received said property from anybody and knew that it was stolen to find him guilty as charged in the indictment.

Appeal from the District Court of Travis. Tried below before the Hon. James R. Hamilton, judge.

Appeal from a conviction of receiving and concealing stolen property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Dickens & Dickens,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—The indictment charges appellant with having received from Otto Best a lot of jewelry, knowing same to have been stolen and that it had theretofore been acquired by Roberta Armstrong in such manner as that the acquisition came within the meaning of the term theft, and that appellant, knowing said property to have been so acquired, received and concealed it.

If the property was stolen, and appellant either received or concealed it, knowing at the time of such reception or at the time of such concealment that it was stolen, he would come within the purview of the statute. From the testimony of Alberta Robinson it appears that she and Roberta Armstrong and Otto Best went to the residence of Miss Melaskey between midnight and daylight, and that Roberta Armstrong entered the house and committed theft of a box of jewelry consisting of diamonds set in various

forms and other valuable jewelry. It is also shown by this witness that she and Best remained outside while Roberta Armstrong entered the house and committed the theft. When she came out of the house Best opened the box, discovered its contents, and the three went away. She further testified that on the following morning Best had transferred some of the jewelry of the box to a sack; that she, Alberta Robinson, with Best went to appellant, and that Best handed him the sack and asked him to obtain money on it at a pawnshop. They did not open the sack, and so far as her testimony indicates appellant did not know the contents at the time; that he went away and pawned it finally to a party whose name is Vicenti Falcone. As we understand the statement this witness is not corroborated as to the theft by the parties named. There is no contention but the evidence excludes the idea that appellant had anything to do with the theft. About sixty days after this burglary and theft appellant was arrested. He denied strenuously upon the first examination by the officers that he had anything to do with it, or knew anything about it. Later, however, he admitted that he left the property with Vicenti Falcone and obtained a small amount of money upon it. While the jewelry was very valuable, the defendant and the other negroes who were connected with it seem not to have appreciated that fact. Appellant in his confession stated that Vicenti Falcone received this property. The officers arrested Vicenti, who went with an officer to some place in East Austin and secured some of the jewelry. This may be a sufficient statement in connection with matters noticed later.

Appellant objected to the confession while under arrest, because same was not reduced to writing and he was unwarned. As we understand the statute, these objections were not well taken. Where property is found in pursuance to a confession it does not come within the rule of warning and written confession. This question has been before the court in several cases. We, therefore, do not think the court erred in admitting the confession of appellant that he carried the property to Vicenti Falcone. The property was recovered by reason of appellant's admissions.

Vicenti was arrested and carried to police headquarters. After conversation had with Vicenti he was carried to East Austin and, as before stated, found some of the jewelry and turned it over to the officers. The bill of exceptions reserved to this testimony is of some length and goes somewhat into details of the acts and occurrences. We are of opinion that the acts and conduct of Vicenti, which amount to a confession as decided in Nolen v. State, 14 Texas Crim. App., 474, would not be evidence against appellant, even though committed in his presence. The statements and confession of Vicenti, under the circumstances, could not be used as against appellant, although appellant was present and heard them. He remained silent. See Wright v. State, 37 Texas Crim. Rep., 627;

Bradshaw v. State 68 Texas Crim. Rep., 622; Windham v. State, 67 Texas Crim. Rep., 664; Martin v. State, 57 Texas Crim. Rep., 595. We do not desire to be understood as holding that the fact that Vicenti turned over the property to the officers would be inadmissible. We think it would be under the decisions; but his acts and conduct, or statements which are tantamount to a confession, could not be used against appellant. The acts and conduct of Vicenti may be considered as confessions as much so as if made in words. Vicenti may have known the value of the property and defendant did not at the time he received it, and the testimony rather indicates such to be the fact. Vicenti's secretion of the property in order to avoid its being recovered should not be used against appellant, unless in some way appellant authorized its secretion on the part of Vicenti. There is nothing to indicate, as we understand this record, that he instructed Vicenti with reference to the property, one way or the other; that he simply carried to Vicenti and pawned it with him for the money that he did receive and went away. The subsequent conduct on the part of Vicenti, showing guilt on his part in concealing it, should not be used against appellant. The damaging effect of this testimony, it occurs to the writer, is evident, and if Vincent had been upon trial would have been legitimate; but the subsequent acts of Vicenti, after appellant's connection with the property had ceased, could not be used against him.

Another bill recites that while the witness Morris was testifying for the State he was asked: "What did the defendant then say? A. Well, he said we will go get the balance of the goods. Q. Well, did he or not make a statement as to where they were? A. No, he did not know where it was. Q. What did you do then? A. I took Mr. Lafe Young, who was then city detective, and carried Frank Kyle—or he carried us, we followed him down Colorado Street from the city hall to the corner of Third and Seventh, and near Seventh, or two doors north of the corner, to a little Mexican barbershop. He had never informed us after he left to which place he was going." Here counsel for defendant urged various objections, based upon the fact that defendant was under arrest, and such testimony had no connection with the confession. The court then stated he would admit all acts of defendant that led to the recovery of the stolen property and would exclude other acts. "Q. All right, go ahead. A. I think I asked him on the way down how far it was so we could get some way to ride if necessary, and he said it wasn't far, and when we got as far as Third street and Colorado he went into the Mexican barbershop—I didn't know his name—and he asked this man, this Mexican, he said where is the old man?" Here other objections were urged, and the matter seems to have terminated. This testimony was not admissible. Appellant was under arrest, and this was used as a confession

against him, or in the nature of a confession, in the face of the fact that he stated he did not know where the property was, nothing was found on this trip. While the bill is a little indefinite, this testimony should not be admitted.

Another bill recites that while the same witness was testifying he was asked this: "After you had this talk with Sid Bryant down there at that stable—you don't know where he went, but what did Lafe Young do, did he stay there or go away somewhere? A. He went away. Q. When did you next see Lafe Young and Sid Bryant? A. No, Sid Bryant didn't go with Young. I hand-cuffed Sid Bryant to Frank Kyle and took them to the city jail, and Lafe only went away. I saw Lafe Young probably an hour after that. Q. Did he have anything in his possession? A. He had four diamonds. Q. What did he have? A. He had four diamonds and a ruby that was later identified by Mr. Bouchard as his property, or the property of the Melasky family. Q. Do you know whether these diamonds and the ruby were the stones that came out of a pin belonging to Miss Sallie Melaskey that was taken from the house at the time of the burglary you talked about? A. They were identified as such by the owner." This testimony was clearly inadmissible. Appellant was under arrest and had nothing to do with the conduct of Lafe Young. There was nothing to show that he knew anything about what Lafe Young was doing, or that it was done from any statements of appellant. The statements, acts and conduct of Bryant were admissible against defendant.

There is a question raised with reference to the charge. Although exception was not properly reserved to the charge, yet it is urged for reversal. We mention it in passing so that it may not occur upon another trial. The indictment charged the reception by appellant of the alleged stolen property from Otto Best after it had been fraudulently acquired in a burglarious entry of the Melaskey home. The court instructed the jury in very general terms that if defendant received the property described in the indictment, and if they should find beyond a reasonable doubt the property was acquired by theft, and defendant knew that fact, and that it was over the value of fifty dollars, they would find him guilty as charged in the indictment. Under this charge appellant could have received the property from anybody, and it could have been acquired by theft by anybody. The indictment charged it was received from Otto Best after it had been stolen by Roberta Armstrong. Applying the law to the facts, the allegations of the indictment should be followed, as that is the criminal charge preferred. It nowhere undertakes to charge the jury as a condition precedent to conviction they must find that he received this property from Best after it was acquired by Roberta Armstrong by theft.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*