## Joe Stella Rains v. The State.

### No. 7614.   Decided June 6, 1923.

**1.—Murder—Confessions of Co-Conspirator—Rule Stated.**

It is not the understanding in this court that in the trial of one accused of homicide· the declaration of the co-conspirator is admissible under that phase of the statute which permits the introduction of an unwarned, unwritten or unsigned confession of the accused. The confession admissible under that phase of the statute is the confession of the accused on trial, and not of another person. Following Sapp v. State, 87 Texas Crim. Rep., 623. Distinguishing Funk v. State, 208 S. W. Rep., 509.

**2.—Same—Confession of Co-Conspirator.**

To render the confession of the co-conspirator admissible against the accused on trial, the declaration must be one made before or during the conspiracy, or before its final termination, and in pursuance of the common design.—Following Cox v. State, 3 Texas Crim. App., 256, and other cases.

**3.—Same—Declaration of Co-Conspirator—Principal—Accomplice.**

The rule applicable to the declarations of co-conspirators, where a principal is no trial, is to be distinguished from the rule applicable where and accomplice is on trial. In the latter case the declaration is to be received to prove the guilt of the principal offender, and in the instant case a confession of the co-conspirator was obnoxious to the rule excluding hearsay testimony. Following Kyle v. State, 217 S. W. Rep., 943.

**4.—Same—Defendant's Confession—Facts Already Known.**

That the confession of the defendant was not admissible as a voluntary confession is obvious and is conceded; neither was it admissible to establish facts already known, and the admission of these confessions of the defendant, is reversible error. Following Nolen v. State, 14 Texas Crim. App., 474.

**5.—Same—Declaration of Co-Conspirator.**

Where the commission of the offense for which the accused was on trial is but an incident to, or one of the parts of, the ultimate purpose of the conspiracy to commit crime, the declaration of the conspirator made before the realization of the ultimate purpose, and in furtherance thereof, may be properly received. Following Eggleston v. State, 59 Texas Crim. Rep., 552. But after the purpose of the conspiracy is effected the ex parte declaration of the co-conspirator is inadmissible.

6.—Same—Accomplice—Corroboration.

In the absence of other evidence of conspiracy the guilt of the defendant could not be proved by the confession of a co-conspirator, even if it were admissible, inasmuch as she was an accomplice without corroboration.

Appeal from the District Court of Cass. Tried below before the Honorable Hugh Carney, Special Judge.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Bartlett & Patman*, for appellant.—On question of confessions of co-conspirator. Draper v. State, 22 Texas, 400; Schwen v. State, 37 Texas Crim. Rep., 370; Overstreet v. State, 150 S. W. Rep., 631; Couch v. State, 126 id., 866; Garcia v. State, 228 id., 938; Dawson v. State, 222 id., 557; Bouldin v. State, 222 id., 555.

On question of unknown facts, Baggett v. State, 144 S. W. Rep., 1136; Crowder v. State, 11 id., 835.

*R. G. Storey*, Assistant Attorney General, and *C. A. Wheeler*, District Attorney, for the State.—On question of confession of co-conspirator, Serrato v. State, 171 S. W. Rep., 1133, and cases cited in opinion.

On question of defendant's confession, Harkey v. State, 234 S. W. Rep., 221, and cases cited in opinion.

MORROW, Presiding Judge.—The conviction is for murder; punishment fixed at confinement in the penitentiary for a period of fifteen years.

It is charged that appellant killed Carney Rains by mashing his head and by pulling and twisting his body and neck with her hands.

On the 18th of October, Carney Rains, the six-weeks old baby of the appellant was missed from her place of abode. On the following day, it was found in bed at the home of Birdie Green. Appellant and Birdie Green were arrested and charged with its murder. The body of the child, when found, was naked and upon it there were some pieces of leaves suggesting that it had lain on the ground. The only mark of violence noticed by the officer at the time was an abrasion on the forehead. No special examination of it was made. It was afterwards buried and when disinterred and a closer examination made, there were found indications that its neck had been broken.

Appellant was a girl about fifteen years of age. Birdie Green was about twenty years old. Both were negroes.

There was evidence that Birdie Green had previously killed a baby. There was also evidence that before its death, appellant had refused to give her baby to friends who desired to raise it. On the day

·94 T. C.—37.

that the baby was missed, Birdie Green was at the home of appellant, and a few days previous had had a conversation with her. Upon missing the baby, the appellant instigated and participated in a search for it. There was evidence that there was a birthmark upon the baby's forehead. The foregoing facts are independent of the appellant's testimony.

Appellant testified as a witness and, according to her version, so far as the facts are deemed material they follow: When the baby was about three weeks old, appellant went to live with some friends. She had a mother's love for the baby and refused to give it away on several occasions. On October 1st, she was sick in bed and the baby was with her. Birdie Green came to the house on an errand. She took the baby in the next room to put it to sleep. The baby became quiet and Birdie left. Later appellant got out of the bed and went into the next room and observed where the baby had lain on the bed but it was gone. She gave the alarm and a search was made in which she took part. She denied any participation in the killing of the child and any antecedent knowledge of the intent of Birdie Green to do so or agreement to that effect.

After her arrest, Birdie Green signed a written statement, according to which she and appellant had agreed to kill the baby. Birdie Green told appellant to put her thumb upon the baby's forehead and mash in the mole on its head with her fingers; that on one occasion she had seen a woman kill a baby that way. When the appellant did this, the baby cried. Appellant then said that she could not kill it that way, and that she was going to break its neck. She twisted the baby's neck and bent it back and the baby died. This statement went into much detail, but the substance of it has been stated above. Birdie Green afterwards pleaded guilty of the murder of the child. Her written statement was introduced in evidence against the appellant over an appropriate objection that it was hearsay. The record and bills of exception are definite to the point that at the time Birdie Green made her written confession, both she and appellant were under arrest; that appellant was in jail and Birdie Green was in the office of the county attorney.

Appellant insists that in admitting the written confession of Birdie Green in evidence upon the trial of appellant, the learned trial judge was in error. Attached to the bill is an explanatory statement in which the court directs attention to the fact that he was at first under the impression that the confession was rendered admissible under the rule stated in Funk's case, 85 Texas Crim. Rep., 527, in that there was in the confession a disclosure of facts that the child's neck was broken, which was not previously known. He further remarked that the jury was instructed that the confession of Birdie Green could not be considered as evidence of the guilt of the appellant but to determine whether Birdie Green was guilty; that this view was taken on

account of the charge on principals. In Funk's case, supra, weapons which were identified on the trial of Funk as having been used in the homicide, were found by the sheriff after he had arrested and conversed with two of the co-conspirators of Funk. The opinion, as reported, fails to make as clear as should have been done the facts upon which the ruling was made. In the case of Howard v. State, 92 Texas Crim. Rep., 221, 242 S. W. Rep. 740, we have taken occasion to state the facts more fully and to disclaim any intent to extend or change the rule long in force in this State touching the circumstances under which the declarations of a co-conspirator may be received. See Branch's Ann. Tex. P. C., page 37. In Funk's case, there were no declarations of the co-conspirators received. The ruling therein was on facts similar to those in Pierson's case, 18 Texas Crim. App. 524. It is not the understanding of this court that in the trial of one accused of homicide, the declaration of a co-conspirator is admissible under that phase of the statute which permits the introduction of an unwarned, unwritten or unsigned confession of the accused. The confession admissible under the phase of the statute is the confession of the accused on trial and not that of another person. See Code of Crim. Proc., Art. 810; Bloxom v. State, 86 Texas Crim. Rep., 562; Bouldin v. State, 87 Texas Crim. Rep. 419; Sapp v. State, 87 Texas Crim. Rep. 623; Kyle v. State, 86 Texas Crim. Rep., 471, 217 S. W. Rep. 943. To render the confession of the co-conspirator admissible against the accused on trial, the facts must bring it within one of the rules which are deduced by Mr. Branch from numerous decisions of this court and collated in his Ann. Tex. P. C., under Sections 693, 694 and 695. Under these rules, the declaration must be one made before or during the conspiracy or before its final termination and in pursuance of the common design. Cox v. State, 3 Texas Crim. App. 256; Branch's Ann. Tex. P. C., Sec. 695. It is the general rule that evidence of acts and declarations of a co-conspirator made after the commission of the offense in the absence of the accused are not admissible. Where the declaration in res gestae and possibly in some other exceptional cases, it may be properly received. Phelps v. State, 15 Texas Crim. App. 55. The present facts come within no exception to the rule of which we are cognizant. Weathersby v. State, 29 Texas Crim. App. 278. The language of Presiding Judge Hurt in Schwen's case, 37 Texas Crim. Rep. 370, is illustrative of the rule applicable in this one, in which he said:

"The acts and declarations of J. A. Schwen and wife were clearly inadmissible. If there had been a conspiracy to steal the yearling, it was ended. Again, these acts and declarations were not in furtherance of the common design, but were in the nature of confessions of guilt, with attempts to conceal the fruits of the crime. Being inadmissible, the error is not cured by instructions from the court. No instructions of the court could relieve the case from such an error.

It is the duty of the court to pass upon the admissibility of testimony, and not the jury. If the fact or act is admissible because of another fact, and the latter fact is in doubt or controversy, then the court should instruct the jury, if they believed that fact, then to receive the evidence, but if they do not believe the fact, to reject it. There was no question in this case as to the fact that the conspiracy had ended, nor was any act or declaration done or said by J. A. Schwen, or his wife, in furtherance of the conspiracy. This being true, whether the conspiracy had ended or not, these acts and declarations were not admissible.''

Later cases upon the subject are Dawson v. State, 87 Texas Crim. Rep., 434, 222 S. W. Rep. 557; Hilliard v. State, 87 Texas Crim. Rep., 416, 222 S. W. Rep. 553; Overstreet v. State, 67 Texas Crim. Rep. 565. The rule applicable to the declarations of a co-conspirator where a principal is on trial is to be distinguished from the rule applicable where an accomplice is on trial. In the latter case, the declaration of the co-conspirator is to be received to prove the guilt of the principal offender. The necessity for this follows from the law which makes proof of the guilt of the principal offender an essential predicate to the conviction of the accomplice. This rule is illustrated in the cases cited by Mr. Branch in his Ann. Tex. P. C., Sec. 71. See also Crook v. State, 27 Texas Crim. App. 237; Sapp v. State, 87 Texas Crim. Rep. 623. In the instant case, the admission in evidence of the confession of Birdie Green was obnoxious to the rule excluding hearsay testimony. See Kyle v. State, 86 Texas Crim. Rep. 471 and cases cited. Subsequent to the time that the written statement of Birdie Green was made, appellant signed a statement which contained admissions of guilt. This statement was admitted against her over the objection of the appellant that it was not voluntary. The voluntary character of a confession is an essential requisite to its admissibility except under the phase of the statute which says:

''***unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed.'' (Art. 810, Code of Crim. Proc.)

The appellant testified as to the conduct of the county attorney, the person to whom the confession of the appellant was purported to have been made and the circumstances under which the written statement introduced against her was signed. If her testimony is true, she was brought before the county attorney by the deputy sheriff who arrested her. The county attorney tried to get her to confess that she helped to kill the baby. She told him she had nothing to do with it. He told her that a mob of white folks would get her if she did not sign it; that a mob was waiting outside. She did not tell her story but in response to inquiries answered ''yes.'' After

the statement was written, she declined to sign it, whereupon she was again told that a mob was coming. One of the officers took her to a window and pointed out to a place close to the jail where they hung people, and one of them said with an oath that if she did not sign the statement, a mob would swing her to the big limb next to the window, which was pointed out. In his testimony, the county attorney said:

"The sheriff, the deputy sheriff and myself brought Joe Stella up to the court house and to the sheriff's office again, and after much persuasion could not get her to make any statement that would involve her in the killing. I believe we did tell her that we already had enough sufficient evidence to justify a jury in breaking her neck, and if she would confess and tell the truth about it we would try to make it light on her; we possibly told her that we would see that she got a light sentence, in fact, we told her most anything trying to get her to make a confession. We possibly interrogated her something like an hour and a half or two hours, but she maintained that she was innocent and would not make any statement implicating her in the killing. ***But anyway one of us suggested that the white folks were getting wrought up over the killing of this baby and unless she told a different story they might come in and take charge of her. Something was said about a mob. She begged us to protect her from a mob, but the sheriff told her that unless she would come clean and tell a different story, he did not feel inclined to give her any protection so far as he was concerned. *** It was after many threats were made before we were able to get her to tell anything that would coincide with the confession of Birdie Green. She never did tell a connected story about it, but I would ask her questions and she would answer them."

The statement was written and read over to the appellant, and she said: "White folks, that's the biggest lie." The county attorney said further:

"We then took time about trying to get her to sign the statement, but nearly every time we would ask her to sign it, she would say that there was not a word of truth in it. Finally our patience was about exhausted and the sheriff took her to the window and pointed out the water tower and asked her if she knew what it could be used for. There was something else said about a mob about that time too. It was soon after that or about that time she signed it and we sent her on back to jail."

On the examining trial, appellant repudiated the statement as well as that of Birdie Green. This testimony revealing the circumstances attending the making of the confession was not controverted. On the contrary, it was corroborated by the sheriff and the deputy sheriff who were present when the confession was obtained and took part in the efforts to procure it.

That the confession of the appellant was not admissible as a voluntary confession is obvious and is conceded. It is contended upon behalf of the State, however, that at the time appellant's confession was taken, the State was not in possession of the full details of the manner in which the child was killed. The prosecution was in possession of the written confession of Birdie Green in which she testified that in killing the child they first pressed upon his head or upon the mole that was upon its head and afterwards broke its neck. Before Birdie Green made her statement, the officers examined the child and observed an abrasion or mark upon its forehead. If we properly comprehend the record, after Birdie Green made the confession stating that there was first an effort to kill the child by pressing on the mole on its forehead, that that method was abandoned and its neck was broken, they exhumed the child and found that there was an abrasion upon its forehead and that its neck was broken. Subsequently the confession of the appellant was taken under the circumstances which have been detailed. In her confession, she said that she mentioned the pushing in of the skin or the mole on the baby's forehead. These facts apparently were both known to the State before appellant made the confession. In truth, all of the facts upon which the prosecution rests were learned after the confession of Birdie Green was made and before that of the appellant was made. The involuntary confession was not admissible to establish facts already known. Nolen v. State, 14 Texas Crim. App. 474.

Where the commission of the offense for which the accused on trial is but an incident to or one of the parts of the ultimate purpose of the conspiracy to commit crime, the declaration of the co-conspirator made before the realization of the ultimate purpose and in furtherance thereof may be properly received. See Eggleston v. State, 59 Texas Crim. Rep. 552; Franks v. State, 36 Texas Crim. Rep. 149; O'Neal v. State, 14 Texas Crim. Rep. 582; Sapp v. State, 87 Texas Crim. Rep. 610.

The contention in the instant case is that this principle becomes applicable from the fact that the alleged conspiracy contemplated the concealing of the crime. Doubtless, in practically every case of conspiracy there is a design to conceal the crime, but it is conceived that after the purpose of the conspiracy is effected, as in this case the destruction of the child, and after the means used in the act have been ascertained, as they were in the instant case through the confession of Birdie Green, and after the arrest and incarceration of both of the alleged conspirators, the right to use an ex parte declaration of one of the parties made after the arrest and discoveries mentioned, against the other would not exist.

It may be added that except in the confession of Birdie Green improperly admitted in evidence, and the involuntary confession of appellant, we find no evidence of conspiracy. The guilt of the ap-

pellant.could not be proved by the confession of Birdie Green even if it were admissible in evidence, because she, according to her own statement, was an accomplice witness, upon whose testimony, in the absence of corroboration, the statute forbids conviction, (Art. 801, C. C. P.), nor could it be proved by the confession of the appellant obtained by coercion, (Art. 810, C. C. P.)

We pretermit discussion of the other matters which are contained in the record. They are not such as will probably occur upon another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*