SALVADOR JACQUES v. THE STATE.

No. 9154.    Delivered March 25, 1925.

Rehearing denied May 13, 1925.

1.—Murder—Statement of Accused—Before Magistrate—Practice.

Where a statement in writing is made and properly signed by the accused before an examining magistrate, he shall in every case attest by his own certificate and signature to the execution, and signing of the statement.    To authorize the admission of such confession as a voluntary statement before an examining magistrate, this certificate must appear.    Art. 295, C. C. P.

2.—Same—Voluntary Confessions—Subject Continued.

The statute touching confessions, however, does not require a formal certificate but merely that it be witnessed by some person other than a peace officer.    The statement of appellant in this cause was not offered as a voluntary statement made before an examining magistrate, but was offered as a confession, and containing all the requisites of a confession, it was properly admitted.    Art. 810 C. C. P.    Following Gaston v. State, 57 Tex. C. R. 270; Martin v. State, 57 Tex. C. R. 595.

3.—Same—Confessions—Bills of Exceptions—Requisites of.

Where a bill of exceptions sets forth that a confession of appellant, offered in evidence was objected to on the ground that the statement was not voluntary and that there had been no proper warning and that appellant had been coerced, threatened and intimated, it presents nothing for review. The grounds of objection must be proven, and such proof brought forward, or a certificate of the trial judge showing that the facts stated in the objections were true.    Following Gonzales v. State, 226 S. W. 405, Quinney v. State, 86 Tex. C. R. 356.

4.—Same—Confessions—Introduction of—Practice in Trial Court.

Where testimony attacking the voluntary character of a confession of accused is introduced, and rebutted by evidence of the state, trial court should submit the issue thus raised by appropriate instructions to the jury. This was done in this case, and in the light of this record, nothing is revealed

which would warrant this court in holding the confession involuntary, or other than freely made, and in receiving it in evidence the trial court committed no error.

### 5.—Same—Witness—Impeaching—Former Statements.

It was proper to permit the state to show by the witness Petra Jiminez, a state witness, that she had made a different statement in writing, to that given by her on the trial. It is well settled that when a witness who is introduced gives testimony injurious to the cause of the person by whom he is offered, that the witness may be impeached by showing previous contradictory statements. Such testimony, as was done in this case, should be limited in the court's charge for impeaching purposes alone. Art. 815, C. C. P. and many decisions collated in Vernon's, Tex. Crim. Stats., Vol. 2, p. 763.

Appeal from the District Court of El Paso County. Tried below before the Hon. W. D. Howe, Judge.

Appeal from a conviction of murder; penalty assessed at death.

The opinion states the case.

*E. B. Elfers,* of El Paso, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at death.

The deceased Coleman was a police officer and had arrested the appellant on previous occasions. The deceased left his home in an automobile between four and four-thirty in the morning. He stated upon leaving that there had been some burglaries committed and that he was going out to try to catch the burglars. Soon after he left three shots were heard. After the first shot there was a groan, and then two more shots were fired. The car was standing on the street, and in it the dead body of the deceased was found in a sitting position. His pistol was in his scabbard. There was evidence that the appellant, on the former occasion of arrest, had threatened to kill the police officers. Immediately after the gun shots and the exclamation, a man was seen to run away, and tracks were subsequently found which seem to have corresponded in general description with the shoes worn by the appellant at the time of his arrest. Appellant was arrested north of Rosa Street on the night after the deceased was killed. It seems that he was at a camp fire and attempted to draw his pistol when the officers appeared. Ammunition and a pistol were found in his possession.

The deceased was shot from the rear and his heart was penetrated.

Appellant testified that he did not shoot the deceased; that the pistol in his possession at the time of his arrest belonged to him

but had been pawned in order to get his grandfather out of jail; that he did not get it back until the day of his arrest.

The appellant's confession in these words was introduced in evidence:

"Yes, sir, I killed Coleman. I have got nothing else to say. Once he was going to arrest me on a charge of vagrancy and he beat me up pretty bad. This happened on 9th Street some time ago. I got away from him that time. This morning that this thing happened he was going to catch me without me doing anything to him. He already had me under arrest, and as he had already beat me up once and that morning had already landed two blows on me with his gun, I pulled out my gun and shot him, I don't know how many times."

There are two bills of exception. Appellant was brought before the Justice of the Peace Rawlins sitting as a magistrate when, according to a written statement and oral testimony, the appellant was informed that he was accused of the murder of the deceased Coleman and that he had a right to make a voluntary statement; that it was not compulsory that he do so and that if he made such a statement, it would be reduced to writing and could be used against him upon his trial, but could not be used in his favor, whereupon appellant made a statement which was reduced to writing, signed with his mark, and witnessed by R. B. Rawlins and R. S. Curran, Jr. This statement was introduced in evidence against the protest of the appellant wherein he made the objection that the statement was not voluntary and that there had not been proper warning; that the appellant had been coerced, threatened and intimidated. These were but grounds of objection, unverified by any statement of the trial judge.

"Incorporation in bill of exception of grounds of objection is not a certificate of the judge that the facts which form the basis of the objection are true, merely showing that such an objection was made."

See Gonzales v. State, 226 S. W. Rep. 405; Quinney v. State, 86 Texas Crim. Rep. 356.

In qualifying the bill the trial judge said that the document was not admitted as a voluntary statement made before the examining magistrate, but that it was regarded as containing the requisites of a confession and was received in evidence as such. The trial court, in holding that the instrument was not admissible as showing a voluntary statement before a magistrate, was no doubt influenced by the absence of any certificate by the magistrate which seems to be required by Art. 295, C. C. P., wherein it is said:

"   *   *   *   and the magistrate shall, in every case, attest by his own certificate and signature to the execution and signing of the statement."

See certificate suggested in Willson's Criminal Forms, No. 1045. The statute touching confessions, however, does not require a formal certificate, but merely that it be witnessed by some person other than a peace officer. See Art. 810, C. C. P., also Gaston v. State, 55 Texas Crim. Rep. 270; Martin v. State, 57 Texas Crim. Rep. 595.

In the statement as set out in the bill of exceptions we fail to perceive any inherent defect as a confession. It is in writing, signed by the mark of the accused, duly witnessed and contains the warning required by statute. The evidence relied upon by the appellant to show that the confession was not voluntary does not accompany the bill. In qualifying it, however, the trial court refers to the statement of facts which we have examined.

The witness Montoya, an interpreter, upon behalf of the appellant, testified in connection with his cross-examination, that the appellant, while in the court of Judge Rawlins, after warning had been given, said:

"Yes, I killed Coleman; I have nothing else to say."

That the district attorney then suggested to the appellant that as he had admitted the killing, he had better give some reason for it if any existed; that it was in response to this that the appellant added the concluding words in the statement which he signed.

Appellant in his testimony claimed that he had been subjected to many discomforts while in jail, such as having his feet chained, the windows of his cell closed in order to prevent ventilation, and that his food was meagre; that the confession was made after eight days of such confinement, and that he was desirous of releasing himself from these discomforts. Other witnesses who claimed to have been present at the examining trial, testified to the composure of the appellant at the time the statement was made. One of these witnesses said that at the time of the trial, appellant needed a haircut and a shave; that he looked like a man who had been in jail; that his appearance was not normal but that his demeanor appeared so. The district attorney gave testimony contradictory of the claim that there was coercion upon the appellant and supporting the State's theory that the statement was voluntary. Similar testimony was given by the county attorney.

In instructing the jury, the court, in appropriate language, directed that they determine whether or not the confession was voluntary and whether it was induced by improper methods such as coercion or promises.

The court also instructed the jury upon the defensive issue of manslaughter raised by the confession.

In the light of the record, we are constrained to the view that nothing is revealed which would warrant this court in holding the confession involuntary or other than freely made; nor that would

justify this court in holding that in receiving it in evidence the trial court committed error.

Another bill of exceptions relates to the procedure with reference to the witness Petra Jiminez. She was introduced by the State, and in the bill, there is not set out the testimony which she gave on direct examination. In view, however, of the extreme penalty, we have examined the statement of facts to ascertain her direct testimony. She was a girl nineteen years of age and a paramour of the appellant. According to her testimony on direct examination, she and the appellant slept together on the night of the homicide. They retired early in the night and appellant remained in bed with her until sun up. He did not at that time possess any pistol. The pistol found upon his person at the time of his arrest was in the pawnshop at the time of the homicide. Upon her giving this testimony, State's counsel asked her if she had not signed a written statement on a previous occasion, which statement he exhibited to her at the time. This she denied. He then, after laying the predicate, introduced evidence that she had made a written statement in which she said that on the night of the homicide, the appellant did have the pistol in question; that he arose about four o'clock in the morning, taking the pistol with him; that he returned about six o'clock and told her that a policeman had been shot; that the policeman was shot because he wanted to search the appellant. The introduction of this impeachment testimony was resisted upon the ground that the conditions authorizing the State to impeach its own witness did not exist. In qualifying the bill, the trial court certifies that at the time the witness was called, State's counsel was in possession of a certain statement and that nothing had occurred which would cause the court to suspect that in offering the witness, counsel did not believe that the testimony of the witness would be in accord with her previous statement; and her testimony being harmful to the State, it was deemed permissible to allow her impeachment by the use of her previous declarations. In the light of the bill, as qualified, and the facts as we learn them from the record, we are impressed with the view that in the ruling of the court there was no departure from authorized procedure. When a witness who is introduced gives testimony injurious to the cause of the person by whom he is offered, the witness may be impeached by showing previous contradictory statements. This is in accord with the statute, Art. 815, C. C. P., and many decisions of this court collated in Vernon's Texas Crim. Stat., Vol. 2, p. 763.

In the present case the previous declarations of the witness were specifically limited in the charge of the court so that they would not be used as original but as impeaching testimony alone.

Taking note of the circumstances portrayed by the testimony and the confession of the accused, and recalling that the verdict of the

jury has the approval of the trial judge, and perceiving no fault in the procedure, this court feels in duty bound to order that the judgment be affirmed. It is so ordered.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, Judge.—Appellant's motion reasserts the alleged errors relied on by him originally, and questions the correct disposition of them in our former opinion. On account of the extreme penalty assessed we have again examined the bills of exception, and in connection therewith have scrutinized the statement of facts closely. We have discovered nothing which impresses us that the disposition already made of the case was improper. The reasons for our views have already been given, and to write further would be a repetition and enlargement only, which we deem unnecessary.

The motion for rehearing is overruled.

*Overruled.*